OPINION
{¶ 1} Defendant, Timothy Thomas, appeals from his conviction and sentence for possession of crack cocaine.
 {¶ 2} On June 10, 2003, Dayton police officer Gregory Orick was dispatched to 710 Rockford Avenue on a report of two women fighting with weapons involved. Officer Orick, a five year veteran of the police department, was very familiar with this area. As a member of the Special Enforcement Team Officer Orick had conducted patrols and surveillance in this area, made several drug arrests in this area, encountered people with weapons, and was involved with shooting or drug activity in this area two out of every four days he was on duty. Officer Orick considered this area an extremely high drug activity area.
 {¶ 3} As Officer Orick and his partner, Officer Ponatera, approached the scene in their police cruiser, Orick noticed a group of six or seven men standing together in front of the apartment building, talking. Two men from that group immediately ran for a sub-basement door in the building. Officer Ponatera pursued the two while Officer Orick approached the others in the group. Officer Orick's attention was drawn to Defendant because he was rocking back and forth on the balls and heels of his feet as if deciding whether to run. Defendant also placed his right hand into his right front pants pocket.
 {¶ 4} Concerned that Defendant might have a weapon, Officer Orick asked Defendant to remove his hand from his pocket. Defendant complied. Just as Orick was asking Defendant if he had any guns or knives, Officer Ponatera emerged from the basement of the apartment building carrying two loaded handguns he recovered. That increased Officer Orick's concerns that Defendant might be armed. At about that time, when Defendant tried to once again place his hand in his right front pants pocket, Officer Orick pushed Defendant's hand away. Officer Orick then decided to conduct a pat-down frisk of Defendant for weapons.
 {¶ 5} As Officer Orick patted down Defendant, he felt a spongy mass in Defendant's right front pants pocket. Officer Orick could not tell if there was a weapon inside the spongy mass he felt. On previous occasions Officer Orick had found weapons wrapped in nylon rags that had a similar spongy feel. When Officer Orick asked Defendant what was in his pocket, Defendant was evasive and said he didn't know. Officer Orick reached into Defendant's pocket and removed the spongy object whereupon he discovered it was a wad of money wrapped around a plastic baggie with two pills inside. When Officer Orick asked Defendant what the pills were, Defendant stated they were his girlfriend's Xanax pills. Officer Orick then arrested Defendant based upon his possession of the pills. While searching Defendant further following his arrest, Officer Orick discovered a sizeable quantity of crack cocaine concealed between Defendant's buttocks.
 {¶ 6} Defendant was indicted for possession of crack cocaine in violation of R.C. 2925.11(A). Defendant filed a motion to suppress the evidence, which the trial court overruled following a hearing. Defendant subsequently entered a plea of no contest to the charge, was found guilty, and was sentenced by the court to seventeen months in prison.
 {¶ 7} Defendant has timely appealed to this court from his conviction and sentence. He challenges only the trial court's decision overruling his motion to suppress the evidence.
ASSIGNMENT OF ERROR
 {¶ 8} "The trial court erred in failing to suppress physical evidence and statements gained against appellant in violation of his constitutional rights pursuant to the fourth, fifth, sixth, and fourteenth
amendments to the United States Constitution, as well as comparable portions of the Ohio Constitution."
 {¶ 9} When considering a motion to suppress, the trial court assumes the role of the trier of facts and, as such, is in the best position to resolve conflicts in the evidence and determine the credibility of the witnesses and the weight to be given to their testimony. State v.Retherford (1994), 93 Ohio App.3d 586. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Id. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.
 {¶ 10} The only witness who testified at the hearing held on Defendant's motion to suppress the evidence was Officer Gregory Orick. The trial court found his testimony credible and adopted it as the court's factual findings.
 Initial Stop and Detention {¶ 11} Defendant argues that police lacked sufficient reasonable suspicion of criminal activity to justify briefly stopping and detaining him for investigation. We disagree.
 {¶ 12} Law enforcement officers may briefly stop and detain an individual for investigation if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. That is something more than an unparticularized suspicion or mere hunch, but less than the level of suspicion required for probable cause. Terry v. Ohio,
(1968), 392 U.S. 1; State v. White (Jan. 18, 2002), Montgomery App. No. 18731. To satisfy that standard, police must be able to point to specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio,
supra; State v. White, supra.
 {¶ 13} The propriety of an investigative stop or detention must be viewed in light of the totality of the surrounding facts and circumstances. State v. Bobo (1988), 37 Ohio St.3d 177. These circumstances must be viewed through the eyes of a reasonable and prudent police officer on the scene who must react to events as they unfold. Statev. Andrews (1991), 57 Ohio St.3d 86. Accordingly, the court must take into consideration the officer's training and experience and understand how the situation would be viewed by the officer on the street. Id.
 {¶ 14} Many factors such as the suspect's presence in an area known to be a high crime area, furtive gestures or movements by the suspect, or unprovoked flight upon seeing police officers, while standing alone may be insufficient to support a reasonable suspicion of criminal activity and justify an investigative stop. Nevertheless, these are relevant considerations in determining whether the totality of the facts and circumstances are sufficiently suspicious to justify a Terry stop.Illinois v. Wardlow (2000), 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed. 2570;State v. Bobo (1988), 37 Ohio St.3d 177; State v. Williams (Dec. 24, 2004), Montgomery App. No. 20421. While these factors are not necessarily indicative of criminal behavior and can be consistent with innocent conduct, Terry recognized that officers may briefly detain individuals to resolve ambiguity in their conduct. Wardlow, supra.
 {¶ 15} At the time of Officer Orick's initial encounter with Defendant, he had been dispatched to the area on a report of two females fighting with weapons involved. The area was well known to Officer Orick as a very high drug activity area, and he had made several arrests for drug activity and weapons offenses in this area. Officer Orick encountered drug activity or shooting in this area two out of every four days he was on duty. He saw several men gathered in a group in front of 710 Rockford Avenue, including Defendant, and upon seeing police approaching in their cruisers, two of the men immediately ran into the basement of the apartment building. As Officer Orick approached the group on foot, he noticed that Defendant was rocking back and forth on the balls and heels of his feet as if he were deciding whether to run, and Orick observed Defendant place his right hand into his right front pants pocket.
 {¶ 16} The gathering of persons, Officer Orick observed as he approached 710 Rockford Avenue could have had as its purpose the kinds of crime for which the area is well known: drug activity and weapons offenses. Their being in that location, standing alone, created no more than a mere hunch about the possibility of crime, however. Williams,supra. Then, when two members of the group immediately ran for the basement of the apartment building when they saw the police officers approaching, reasonable suspicion of criminal activity developed. Id. That is particularly true with respect to Defendant who rocked back and forth on his feet and looked as if preparing to run, and then reached inside his pants pocket as Officer Orick approached him.
 {¶ 17} We agree with the trial court that the totality of the facts and circumstances, when viewed through the eyes of Officer Orick on the scene, taking into consideration his training and experience, gives rise to sufficient reasonable suspicion to justify a brief investigatory stop and detention of Defendant. Terry.
 Pat-Down Frisk for Weapons {¶ 18} Defendant argues that police lacked sufficient reasonable suspicion that he was armed and dangerous to justify a pat-down search of his person for weapons. He further argues that the pat-down search police performed exceeded its permissible scope and purpose. Again, we disagree.
 {¶ 19} Even though an investigatory stop and detention of Defendant was justified, it does not necessarily follow that a frisk for weapons was also warranted. State v. Lynch (June 6, 1998), Montgomery App. No. 17028; State v. Mickey (June 29, 1990), Montgomery App. No. 11582. A pat-down search for weapons requires reasonable grounds to believe that the suspect is armed and dangerous. Terry, supra; State v. Andrews
(1991), 57 Ohio St.3d 86, 89. The officer need not be absolutely certain that the individual is armed; rather, the issue is whether a reasonably prudent man in those circumstances would be warranted in the belief that his safety or the safety of others was in danger. Terry, supra.
 {¶ 20} In addition to the facts we have already discussed that were known to Officer Orick at the time of his initial encounter with Defendant, the following additional facts are relevant considerations in determining whether the totality of the facts and circumstances give rise to a reasonable suspicion that Defendant might be armed and pose a danger to the officers.
 {¶ 21} When the two people who were in Defendant's group fled into the basement of the apartment building as police approached, Officer Orick's partner, Officer Ponatera, pursued them. As Officer Orick was asking Defendant whether he had any guns or knives concealed on his person, Officer Ponatera emerged from the basement of the apartment building carrying two handguns he had recovered. Officer Orick testified that this increased his concerns that Defendant might also be armed, particularly since Defendant had placed his hand into his pants pocket as Orick approached and was told by Orick to remove his hand from his pocket. About the same time as Officer Ponatera emerged from the apartment building with the guns, Defendant attempted once again to place his hand inside his pants pocket. Officer Orick blocked that attempt. Moreover, a crowd had begun to form around Officer Orick and Defendant.
 {¶ 22} Ohio courts, including this one, have long recognized that persons engaged in illegal drug activity are often armed with a weapon.State v. Evans, 67 Ohio St.3d, 405, 413, 1993-Ohio-186; State v. Taylor
(1992), 82 Ohio App.3d 434; State v. Lindsey (June 23, 2000), Montgomery Ap. No. 18073; Martin, supra. If, as we have already concluded, police had a reasonable suspicion that Defendant might be involved in illegal drug activity, they likewise had a legitimate concern that he might be armed and posed a danger to their safety. That concern was enhanced after Officer Ponatera recovered two handguns from the area where two of the people in Defendant's group ran after seeing police approach, and after Defendant once again tried to place his hand inside his pants pocket after being told by Officer Orick not to do that.
 {¶ 23} The totality of the facts and circumstances in this case, when viewed through the eyes of Officer Orick on the scene, is sufficient to give rise to a reasonable fear that Defendant might be armed, justifying the slight inconvenience and minimal intrusion that a pat-down search for weapons entails. Furthermore, the pat-down search performed by Officer Orick did not exceed its permissible scope or purpose, which is to search only for weapons that might be used to harm the officer, not search for evidence of a crime or contraband. Terry, supra.
 {¶ 24} As Officer Orick was patting down Defendant's outer clothing for weapons, he felt a spongy mass or object in Defendant's right front pants pocket, the same pocket where Defendant had placed his hand. Officer Orick could not tell if there was a weapon inside the spongy mass he felt. On previous occasions, Officer Orick had found weapons wrapped in nylon rags that had a similar spongy feel. When Officer Orick asked Defendant what the object in his pocket was, Defendant was evasive and said he didn't know. Under these facts and circumstances, and through his sense of touch and his law enforcement experience, it was reasonable for Officer Orick to suspect that the object he felt was a weapon. Evans,supra. Because however, Orick remained uncertain as to whether the spongy mass he felt in Defendant's pocket was in fact a weapon, he was authorized to remove that object from Defendant's pocket and inspect it in order to resolve his suspicion. Id. Officer Orick acted with the scope of Terry in conducting this weapons frisk.
 Questioning Defendant Absent Miranda Warnings {¶ 25} When Officer Orick reached into Defendant's pants pocket and removed the spongy object he discovered a wad of folded-up money with a plastic baggie sticking out of it that contained two pills. When Officer Orick asked Defendant what the pills were, Defendant replied that they were his girlfriend's Xanax pills. Officer Orick then placed Defendant under arrest based upon his possession of that substance.
 {¶ 26} Defendant argues that Officer Orick had no right to question him about the nature of the pills in the absence of Miranda warnings, and therefore his statements as to what the pills were should have been suppressed. We disagree.
 {¶ 27} The procedural safeguards prescribed by Miranda apply only when persons are subjected to "custodial interrogation." Miranda v. Arizona
(1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. Whether a person is in custody for purposes of Miranda depends on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983),463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275. The relevant inquiry is how a reasonable person in the suspect's position would have understood his situation. Berkemer v. McCarty (1984), 468 U.S. 420, 442,104 S.Ct. 3138, 82 L.Ed.2d 317.
 {¶ 28} Although Defendant was seized and briefly detained pursuant to s Terry investigatory stop at the time he responded to Officer Orick's question, Defendant's freedom of movement at that point was not curtailed to the degree associated with a formal arrest. Thus, Defendant was not in custody for purposes of Miranda. Berkemer v. McCarty (roadside questioning of motorist detained pursuant to routine traffic stop does not constitute custodial interrogation for purposes of Miranda rule). Officer Orick's conduct in patting Defendant down for weapons in public view and asking him a few questions including one about the nature of the two pills recovered from Defendant's pocket during the patdown, cannot fairly be characterized as the functional equivalent of a formal arrest.Id. See also: State v. Barnett (August 31, 1994), Montgomery App. No. 14019. Because Defendant was not in custody for purposes of Miranda until Officer Orick arrested him for possession of the Xanax pills, his pre-arrest statements made in response to Orick's questioning at the scene were admissible against him. Berkemer v. McCarty, supra.
 {¶ 29} Having lawfully arrested Defendant for possession of the Xanax pills, the subsequent more intrusive search of his person that yielded the crack cocaine his motion sought to suppress was a lawful search incident to Defendant's arrest. Draper v. United States (1959), 384 U.S. 307,79 S.Ct. 329, 3 L.Ed.2d 327. The trial court did not err in denying Defendant's motion to suppress.
 {¶ 30} Defendant's assignment of error is without merit. The judgment of the trial court will be affirmed.
Wolff, J. And Donovan, J., concur.