[Cite as *State v. Cross*, 2014-Ohio-1534.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25838 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CR-633 |
| v. | : | |
| | : | |
| DKARL G. CROSS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 11th day of April, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MATTHEW T. CRAWFORD, Atty. Reg. #0089205, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

CARL BRYAN, Atty. Reg. #0086838, 266 Xenia Avenue, #225, Yellow Springs, Ohio 45837
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Dkarl G. Cross appeals from his conviction and sentence,

following a no-contest plea, for Carrying a Concealed Weapon, in violation of R.C. 2923.12(A)(2), and Improper Handling of a Firearm in a Motor Vehicle, in violation of R.C. 2923.16(B), both felonies of the fourth degree. Cross contends that the trial court erred by overruling his motion to suppress a statement he made to a police officer as he was being patted down for weapons, or as he was about to be patted down for weapons, and to suppress, also, evidence obtained as a result of that statement.

{¶ 2}    We conclude that a reasonable person in Cross's position would not have understood himself to be under the functional equivalent of arrest when responding to the officer's question; therefore, the officer was not required to give the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694  (1966), before asking the question. Consequently, the trial court did not err in overruling the motion to suppress, and the judgment of the trial court is Affirmed.

## I.   A Missing Front License Plate Leads to an Arrest for Weapons Violations

{¶ 3}    Dayton Police Officer Jonathan Sopczak was patrolling in a marked police cruiser with his partner, Jake Willam, one morning in late February 2013, when he saw a car being driven by Cross. The area, 1219 North Gettysburg Avenue, in Dayton, was a high-crime area, including both violent crimes and drug crimes. Violent crimes were reported in that area "almost on a daily basis." Likewise, drug complaints and arrests occurred in the area "on an approximately daily basis."

{¶ 4}    Sopczak stopped Cross because the car he was driving had no front license plate. When stopped, Cross's car was in one of two drive-through lanes at a McDonald's restaurant,

blocking that lane. When Sopzak asked Cross for his driver's license, Cross said he did not have a driver's license.

{¶ 5}   Sopczak testified that he had Cross get out of his car, and "asked him if there was anything on his person that would concern officers."   Cross, who also testified at the suppression hearing, testified:

> A.   He [Sopczak] asked me did I have anything on me that would break or stick him or something like that.   And I then said, no, but there's a bag of weed in my pocket and there's a gun in the car.   And as I'm talking, he's patting me down as I'm speaking.   It's not like he's just standing there looking at me and I'm looking back.   He's got me under control.   And before he goes to do anything in the car, he cuffs me, takes the weed out of my pocket and then puts me in the [cruiser] backseat.   I noticed him get the firearm out of the doorway [the inside of the driver's side car door], and then him and his partner speak for a moment, he comes back, pulls out his card, and reads my Miranda.
>
> * * *
>
> Q.   Okay.   So you were handcuffed?
>
> A.   Yes.
>
> Q.   Was that prior to being placed in the back of the police car?
>
> A.   Yes.
>
> Q.   Do you remember if it was before or after the question that he asked you, do you have anything of concern that I should know about?
>
> A.   Like I said, I think it was simultaneous.   It's kind of hard to tell if he

was, I'm pretty sure he wasn't talking and cuffing me at the same time. So he probably asked me did I have anything on me and then I said no and he pulled out the cuffs and put them on me. Before I got in his car, I had cuffs on me backwards and I never got back out of the car to be recuffed.

\* \* \*

Q. Okay. And the officer, he asked you, according to your statement that I wrote down, if anything would poke, prick or stick him?

A. Something to that effect. It's not verbatim. It could have been, do you have anything on you that would stick me? I can't remember the exact words but what he was asking me was do I have anything on me.

\* \* \*

Q. And it's only after you said no, but I've got a bag of weed in my pocket and a gun in the car that then you were handcuffed; is that right?

A. I'm not sure.

{¶ 6} On cross-examination, Officer Sopczak conceded that it was possible that his pat-down of Cross began simultaneously with the question he asked. Although Sopczak testified that he thought he did not handcuff Cross before putting Cross in the back of his cruiser, he could not remember "exactly" when he put the handcuffs on Cross.

{¶ 7} The officers recovered a firearm from the driver's door pocket of the vehicle Cross was driving. Cross was arrested and charged with Carrying a Concealed Weapon and Improper Handling of a Firearm in a Motor Vehicle. The vehicle, which Cross did not own, was towed.

## II.    The Course of Proceedings

{¶ 8}    Cross moved to suppress both the statements he made and the evidence obtained from the car.   Following a hearing, his motion to suppress was overruled, in its entirety.

{¶ 9}    Following the overruling of his motion to suppress, Cross pled no contest to both charges.   He was found guilty, and was sentenced to community control sanctions.   From his conviction and sentence, Cross appeals.

## III.    Cross Was Not in Custody when He Was Asked the Question that

## Resulted in the Discovery of the Firearm in the Car He Was Driving

{¶ 10}    Cross's First and Second Assignments of Error are as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS INCRIMINATING STATEMENTS MADE BY APPELLANT DURING A CUSTODIAL INTERROGATION WITHOUT FIRST BEING ADVISED OF HIS MIRANDA RIGHTS.

THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS PHYSICAL EVIDENCE DISCOVERED DURING AN UNLAWFUL SEARCH AND SEIZURE OF THE VEHICLE APPELLANT WAS DRIVING.

{¶ 11}    Although there is a recognized exception from the requirement of prior *Miranda* warnings for questions legitimately related to officer safety, that exception does not extend to an open-ended question like "Do you have anything on you I need to know about?"   *State v. Strozier*, 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 22 (2d Dist.).   In the case

before us, we have an unusual situation in which the police officer and the defendant gave conflicting testimony as to what the officer asked the defendant, with the police officer's version being more favorable to the defendant, and the defendant's version being more favorable to the State. For purposes of analysis, we will assume that Officer Sopczak asked the open-ended question, as he testified, "if there was anything on his person that would concern officers," which takes the question out of the officer-safety exception to the *Miranda* requirement.

{¶ 12} The issue then becomes whether Cross was in custody when he was asked the question. If he was in custody, then *Miranda* warnings had to have been given; if he was not in custody, then the question was not subject to the *Miranda* requirement. The trial court found that Cross was not in custody when the question was asked.

{¶ 13} Officer Sopczak testified that once Cross told Sopczak that he had no driver's license, Sopczak made the decision to tow the car. Sopczak also testified that he had not decided, at that point, whether he was going to arrest Cross. In any event, a police officer's subjective intent to arrest a suspect is immaterial to the issue of whether the suspect is in custody for *Miranda* purposes, unless and until that intent is communicated to the suspect. *State v. Wynne,* 2d Dist. Montgomery No. 23727, 2010-Ohio-3900, ¶ 21. The issue is whether a reasonable person in Cross's situation would have understood that he was in custody. *Id.*

{¶ 14} The evidence is unclear as to the temporal relationship between the question Officer Sopczak asked and the pat-down search. But even if the pat-down search preceded the question, a pat-down search, without more, is not sufficient to transform an investigatory stop into custody – the functional equivalent of an arrest – for *Miranda* purposes. *State v. Serafin*, 11th Dist. Portage No. 2011-P-0036, 2012-Ohio-1456, ¶ 38. And whether the pat-down search

itself was lawful is immaterial; even an unlawful pat-down search, without more, is insufficient to transform an investigatory stop into custody. *Id.* at ¶ 25 (the court of appeals did not determine whether the pat-down search was lawful, but still found that it did not transform the stop into custody for *Miranda* purposes). *See also, State v. Mapson*, 8th Dist. Cuyahoga No. 87409, 2006-Ohio-5248, ¶ 14, 22, and *State v. Thomas*, 2d Dist. Montgomery No. 20643, 2005-Ohio-3064, ¶ 28, for the proposition that a pat-down search, without more, does not transform an investigatory stop into custody for *Miranda* purposes.

{¶ 15} Cross relies upon *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, 849 N.E.2d 985. But in that case the suspect was patted down, the officer took his car keys, the officer placed the suspect in the police cruiser, and the officer told the suspect that his car was going to be towed, before questioning the suspect. Id. at ¶ 13-14. Similarly, we held in *State v. Strozier*, *supra*, ¶ 19, that although merely handcuffing a suspect does not transform an investigatory stop into the functional equivalent of an arrest, the conduct of the officers in that case, which included five police officers ordering the suspect out of the car at gunpoint, having him lie down on the ground, and then handcuffing him, did constitute the functional equivalent of an arrest.

{¶ 16} In the case before us, the trial court made no factual finding as to when the handcuffing of Cross occurred in relation to the question Officer Sopczak put to Cross. Although Sopczak thought he did not handcuff Cross until after Cross had told him about the firearm in the car, Sopczak admitted to some uncertainty on this point, admitting that he could not be sure of "exactly" when he was handcuffed by Cross. Based upon the evidence in the record, we conclude that a reasonable finder of fact could find that Sopczak only handcuffed

Cross after Cross told Sopczak about the firearm in the car, so that his being handcuffed was not part of his situation when Sopczak asked him whether he had anything on his person that officers should be concerned about.

{¶ 17}   Based upon a view of the evidence most favorable to the State, as the prevailing party, we conclude that Cross was not in custody for *Miranda* purposes when Officer Sopczak asked him the question that led to the discovery of the firearm in the car.   Therefore, the trial court did not err in overruling the motion to suppress.

{¶ 18}   Cross's First and Second Assignments of Error are overruled.

**IV.   Any Error in the Trial Court's Having Sustained an Objection**

**to a Question Concerning the Issue of Inevitable Discovery, as an**

**Exception to the Exclusionary Rule, Is Necessarily Harmless,**

**Since We Conclude that There Was No *Miranda* Violation**

{¶ 19}   Cross's Third Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT FAILED TO LET APPELLANT TESTIFY AS TO WHETHER HE ATTEMPTED TO MAKE REASONABLE ALTERNATIVE ARRANGEMENTS TO DISPOSE OF THE VEHICLE.

{¶ 20}   The State's alternative argument – its fallback position – is that even if there was a *Miranda* violation, the exclusionary rule should not apply, because the firearm inevitably would have been discovered during the inventory of the car Cross was driving, preceding the tow.   Of course, that argument would not save the *statement* Cross made from suppression, and the statement about the firearm in the car had independent inculpatory significance, since its

admission precluded an argument that he had no knowledge that there was a firearm in the car he was driving, which was not his car.

{¶ 21}   During his re-direct examination, Cross was asked about a call he made to the car's owner – specifically, whether the owner was coming to pick up the car.   The State objected upon the ground that this question was outside the scope of the preceding cross-examination, and the trial court sustained the objection.

{¶ 22}   We find it unnecessary to determine whether the trial court erred in sustaining the objection.   The testimony excluded bore upon the issue of inevitable discovery, which would only come into play if there had been a *Miranda* violation.   Since we have determined that there was no *Miranda* violation, any error in the sustaining of this objection at the suppression hearing was harmless.

{¶ 23}   Cross's Third Assignment of Error is overruled.


### V. CONCLUSION

{¶ 24}   All of the assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.


Copies mailed to:

Mathias H. Heck
Matthew T. Crawford
Carl Bryan
Hon. Dennis J. Langer