[Cite as *State v. Brown*, 2016-Ohio-4973.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26937 |
| Plaintiff-Appellant | : | |
| | : | Trial Court Case No. 15-CR-1308 |
| v. | : | |
| | : | (Criminal Appeal from |
| AUNDRE BROWN | : | Common Pleas Court) |
| | : | |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 15th day of July, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

BARRY S. GALEN, Atty. Reg. No. 0045540, 22 St. Clair Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} Plaintiff-appellant the State of Ohio appeals from an order of the trial court suppressing evidence. The State contends that the trial court erred by concluding that Brown was in custody at the time he was questioned. Defendant-appellee Aundre Brown

contends that under the circumstances, a reasonable person would believe he was not free to leave and was in custody. We agree with the trial court that under the circumstances, Brown was in custody, for *Miranda* purposes, when he was questioned about crack cocaine found on his side of the car he had been driving. Therefore, we conclude that the trial court did not err in suppressing the statement made by Brown while in custody, and the suppression order is affirmed.

## I. The Interrogation After a Traffic Stop

{¶ 2} In early May 2015, Officer Schwartz, a patrol officer for the City of Dayton, was driving a marked cruiser on North Main Street when he observed that Brown's vehicle had no lights to illuminate the license plate. Officer Schwartz activated his overhead lights and initiated a traffic stop for the purpose of issuing a citation. Brown stated that he was already stopped when the police cruiser activated its sirens, because he and his cousin, a passenger in the vehicle, were talking to a young lady on the side of the road.   As the officer stopped his police cruiser behind Brown's vehicle, the passenger got out of the car and starting running. The passenger believed, erroneously, that there was an active warrant out for his arrest. Officer Schwartz chased the passenger until he caught him, then handcuffed him and placed him in the back of the cruiser. Officer Schwartz then approached Brown, who was still in the driver's seat, and asked to see his license. Brown stated that he did not have a license. Officer Schwartz told Brown to get out of the car, and escorted him to the back of the cruiser. Brown was not handcuffed, and was not told he was under arrest. Officer Schwartz testified that Brown was not free to leave. Officer Schwartz sat in the front seat of his cruiser and checked his computer to verify that Brown

was unlicensed. Officer Schwartz called for assistance to have the vehicle towed, since neither occupant had a valid driver's license. Officer Johnson arrived to assist, and inventoried Brown's vehicle before it was towed.

{¶ 3} While the inventory was being completed, Officer Schwartz was writing up a citation for Brown. Brown and his cousin were in the back seat of the cruiser. The doors of the back seat of the cruiser do not open from the inside. During the search of Brown's car, Officer Johnson found a baggie of suspected crack cocaine in the vehicle, near the driver's side door. Officer Schwartz got out of his cruiser, seized the baggie, returned to his cruiser, and asked both Brown and his cousin, "Whose drugs are these?" Before Brown responded, no warnings were given as prescribed by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶ 4} Brown answered the officer's question by responding, "It's mine." After this, the officer did read a *Miranda* warning to Brown, and advised him that he was under arrest. After the *Miranda* warning, Brown refused to answer any further questions at the scene.

## II. The Course of Proceedings

{¶ 5} Brown was indicted on one count of Possession of a Controlled Substance, in violation of R.C. 2925.11(A). He moved to suppress the evidence seized and the statement made at the time of the offense, in which he admitted to possession of the drugs.

{¶ 6} At the hearing on the motion to suppress, Officer Schwartz and Brown testified. Based on the evidence presented, the trial court sustained the motion in part and overruled the motion in part. The trial court found that the officer had sufficient

justification to make the traffic stop and inventory the vehicle, but that the incriminating statement made by Brown before he was informed of his *Miranda* rights should be suppressed. From the order of the court suppressing Brown's statement, the State appeals.

## III. The Standard of Review

**{¶ 7}** "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *State v. Koon*, 2d Dist. Montgomery No. 26296, 2015-Ohio-1326, ¶ 13, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.* The application of the law to the trial court's findings of fact is subject to a de novo standard of review. *State v. Gordon*, 5th Dist. Fairfield No. 14-CA-13, 2014-Ohio-5027, ¶ 14, citing *Ornelas v. United States*, 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

## IV. Brown Was in Custody at the Time of the Interrogation

**{¶ 8}** The State's sole assignment of error is as follows:

THE TRIAL COURT ERRED IN SUPPRESSING BROWN'S STATEMENT. THE STATEMENT WAS NOT MADE IN VIOLATION OF BROWN'S *MIRANDA* RIGHTS AS HE WAS NOT IN CUSTODY WHEN HE

MADE HIS STATEMENT.

**{¶ 9}** The State argues that the trial court incorrectly determined that Brown was subject to a custodial interrogation requiring *Miranda* warnings, because he was not in custody at the time he was questioned about the drugs found in his vehicle. We recently reviewed the applicable law as follows:

"The right to [*Miranda*] warnings is grounded in the Fifth Amendment's prohibition against compelled self-incrimination." *State v. Strozier,* 172 Ohio App.3d 780, 2007-Ohio-4575, 876 N.E.2d 1304, ¶ 16 (2d Dist.), citing *Moran v. Burbine,* 475 U.S. 412, 420, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "The procedural safeguards prescribed by *Miranda* apply only when persons are subjected to 'custodial interrogation.' " *State v. Thomas,* 2d Dist. Montgomery No. 20643, 2005-Ohio-3064, ¶ 27, citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). " 'Custodial interrogation' means questioning initiated by the police after the person has been taken into custody or otherwise deprived of his freedom to the degree associated with a formal arrest." (Citations omitted.) *State v. Vineyard,* 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 32.

"In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that he or she was not at liberty to terminate the interview and leave." *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 27, citing

*Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve 'the ultimate inquiry' of whether there was a ' "formal arrest or restraint on freedom of movement" ' of the degree associated with a formal arrest." *Id.,* quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

"The factors a court should consider in applying this reasonable person test include whether the encounter takes place in surroundings that are familiar to the suspect; the number of law enforcement officers present, as well as their conduct and demeanor; the degree of physical restraint imposed; and the duration and character of the interrogation." (Citation omitted.) *State v. Farrell,* 2d Dist. Miami No. 99-CA-24, 1999 WL 812249, *3 (Oct. 8, 1999). We note that "a police officer's subjective intent to arrest a suspect is immaterial to the issue of whether the suspect is in custody for *Miranda* purposes, unless and until that intent is communicated to the suspect." (Citation omitted.) *State v. Cross,* 2d Dist. Montgomery No. 25838, 2014-Ohio-1534, ¶ 13. Rather, the issue is whether a reasonable person in the suspect's situation would have understood that he was in custody. *Id.*

Individuals are not "in custody" for purposes of *Miranda* during a typical investigatory detention such as a routine traffic stop. *State v. Cundiff,*

2d Dist. Montgomery No. 24171, 2011-Ohio-3414, ¶ 60, citing *Berkemer v. McCarty,* 468 U .S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or was compelled to respond to questions." (Citations omitted.) *State v. Hardy,* 2d Dist. Montgomery No. 24114, 2011-Ohio-241, ¶ 34. During an investigatory detention, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" without the need to first advise the detainee of his *Miranda* rights. *Berkemer* at 439–440. "However, if the individual is, during the course of the detention, 'subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda.*' " *State v. Keggan,* 2d Dist. Greene No. 2006 CA 9, 2006-Ohio-6663, ¶ 31, citing *Berkemer* at 440. (Other citation omitted.)

*State v. Sell*, 2d Dist. Montgomery No. 26458, 2015-Ohio-1940, ¶¶ 15-18.

**{¶ 10}** In the case before us, the trial court determined, based on the totality of the circumstances, that Brown was in custody for purposes of *Miranda* at the time he was asked about the baggie of drugs found in his car. Specifically, the trial court concluded that no reasonable person would believe that he was only being detained long enough for a citation to be written after this series of events:

1. During the traffic stop the passenger ran from the vehicle, Officer

Schwarz chased him, apprehended him and placed him in handcuffs in the back of the cruiser;

2. Defendant Brown, seated at the driver's side of the vehicle, was removed from the vehicle and placed in the rear of the cruiser once it was determined that he did not have a license;

3. The rear doors of the cruiser were locked;

4. Officer Johnson searched the car and found cocaine in the driver's door;

5. Officer Johnson told Officer Schwartz where he found the cocaine and Officer Schwartz physically displayed the cocaine to the Defendant before asking him, "Whose drugs are these?"

{¶ 11} The State points out that Brown was not handcuffed, he was not told that he was under arrest, the officer was not aggressive with Brown and did not use a gun. Although Brown's subjective view is not relevant, Brown stated at the suppression hearing that when the officer was writing up the citation, he thought he was going to be cited and be on his way. Brown was not asked whether his view changed when the officer displayed drugs found in the car and questioned their ownership.

{¶ 12} The trial court did consider the totality of the circumstances, and reached its conclusion based on the objective test of whether a reasonable person, under these circumstances, would have understood that he was in custody at the time he was detained in the back seat of a locked cruiser and asked whether the crack cocaine found in the car was his. We agree that these facts are supported by competent, credible evidence and support a conclusion that the question about the ownership of the drugs was asked as part of a custodial interrogation, triggering rights established under the Fifth Amendment.

**{¶ 13}** We acknowledge that this court has previously held, under different circumstances, that "[t]he mere fact that an individual is sitting in the back seat of a police cruiser, with rear doors that do not open from the inside, without more, is not sufficient to establish custody." *State v. Moody*, 2012-Ohio-3390, 927 N.E.2d 1273, ¶13 (2d Dist.), citing *State v. Harris,* 2d Dist. Montgomery No. 13279, 1992 WL 317447, *5 (Nov. 3, 1992). However, we qualified that rule of law in *Moody* and *Harris* by cautioning that "if the police take actions that would lead a reasonable person in the defendant's position to believe that he was going to be detained indefinitely, the encounter is custodial." *Moody* at ¶ 13, citing *State v. Wilkins,* 2d Dist. Montgomery No. 20152, 2004-Ohio-3917, ¶ 20. Relying on precedent from the Supreme Court of the United States, we commented in *Harris* that:

> [T]he essential question in the case before us is whether the officer's questions addressed to the issues of illegal drugs or weapons altered the routine character of this traffic stop to the extent that a reasonable person in Harris's position would no longer expect that "he will be obliged to spend a short period of time answering questions and waiting while the officer checks his license and registration, that he may then be given a citation, but that in the end he most likely will be allowed to continue on his way."

*Harris* at *7 (Fain, P.J., concurring), citing *Berkemer v. McCarty,* 468 U.S. 420, 437, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984).

**{¶ 14}** The facts in the case before us do present a situation that changed from a routine traffic stop to a custodial interrogation when drugs were found and incriminating

questions were asked while Brown was being detained in the locked cruiser. We conclude, therefore, that the trial court did not err in sustaining Brown's motion to suppress the statement Brown allegedly made regarding his ownership of the drugs found in the car. The State's sole assignment of error is overruled.

## V. Conclusion

{¶ 15} The State's sole assignment of error having been overruled, the order of the trial court suppressing evidence is Affirmed.

. . . . . . . . . . . .

DONOVAN, P.J., and HALL, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Michele D. Phipps
Barry S. Galen
Hon. Richard Skelton