[Cite as *State v. Swift*, 2016-Ohio-8191.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 27036 |
| | : | |
| v. | : | T.C. NO. 15CR1921 |
| | : | |
| JEROD SWIFT | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the _____16th_____ day of _____December_____, 2016.

. . . . . . . . . . .

ANN M. GRABER, Atty. Reg. No. 0091731, Assistant Prosecuting Attorney, 301 W. Third Street, 5th floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

ADELINA E. HAMILTON, Atty. Reg. No. 0078595, Assistant Public Defender, 117 S. Main Street, Suite 400, Dayton, Ohio 45422
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} The State of Ohio appeals from a judgment of the Montgomery County Court of Common Pleas, which granted Jerod Swift's motion to suppress the evidence against

him. For the following reasons, the judgment of the trial court will be affirmed.

## I.    Procedural History

{¶ 2} In June 2015, Swift was found to be in possession of marijuana and cocaine after police officers stopped him while he was riding his bicycle on a city street and patted him down. On August 17, 2015, Swift was indicted on one count of possession of cocaine (less than five grams), a felony of the fifth degree. On November 18, 2015, he filed a motion to suppress the evidence obtained against him as a result of the stop. The trial court held a hearing on January 15, 2016, and subsequently sustained Swift's motion to suppress. The State filed an appeal from the trial court's judgment and certified that the suppression of the evidence had removed any reasonable possibility of an effective prosecution of Swift.

## II.    Facts

{¶ 3} On June 18, 2015, around 5:00 p.m., Swift was riding his bicycle in the "travel part" of East Fourth Street when Dayton Police Officers Zachary Williams and James Campolongo observed him. The officers were in uniform and in a marked cruiser, and Officer Williams was driving. They turned around on East Fourth Street to approach Swift,[1] but they did not activate the cruiser's sirens or lights.

{¶ 4} According to Officer Williams, Swift stopped his bicycle when Williams pulled up alongside him, rolled down the cruiser's window, and asked whether he could "talk to [Swift] real quick." Williams got out of the cruiser, while his partner remained in

---

[1] Officer Williams testified that he was "initially * * *  driving eastbound," then "turned around and drove westbound" before pulling up next to Swift; the trial court's judgment assumes that Swift was aware that the officers had done a U-turn in order to approach him.

the car.  Williams then cautioned Swift about riding his bike "towards the center of the street" and asked Swift, "do you mind if I pat you down[?]"  Swift said, "Sure."  Williams also asked, specifically, whether Swift possessed any guns or other weapons, and Swift stated that he did not.

{¶ 5}  Williams testified that, during the pat down, Swift advised Williams that Swift "had some weed on him."  At this point, Williams handcuffed Swift until he could secure the "weed" and complete the pat down.  Williams found the marijuana and, when patting Swift's legs for weapons, Williams noticed Swift's "buttocks were very tight."  Williams found a "hard object in-between the two butt cheeks," which he suspected to be heroin or crack cocaine.

{¶ 6}  Officer Williams also testified that, after the stop, when he learned Swift's identity, he (Officer Williams) recalled that the night prior to Swift's arrest, "we made an arrest" in a drug case near the location where Swift was stopped.  While that person was being transported to jail, his phone, which had been seized, rang "approximately 20 times," and the caller was identified as "Swift."

{¶ 7}  Swift testified that he had not wanted to stop when the officers pulled up next to him, but "[t]hey made me stop 'cause I tried to keep going."  He further stated that one of the officers "hopped out" and approached him, told him to stop his bike, and "pull[ed] it down."  According to Swift, the officer made him put his bike down and "grabbed [him] by the waist" before patting him down.  Swift denied giving the officers permission to pat him down or having any conversation in which he admitted to the possession of drugs.

### III.    Motion to Suppress

{¶ 8} In his motion to suppress, Swift argued that he was effectively and unlawfully seized when he was stopped on the street, because a reasonable person in his position would not have felt free to leave without obeying the officers' instructions. He further asserted that the officers had neither probable cause nor reasonable suspicion of criminal activity to justify the stop.

*Standard of Review*

{¶ 9} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford,* 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Curley*, 2d Dist. Montgomery No. 27104, 2016-Ohio-7624, ¶ 9. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 10} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Under *Terry*, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot, including a minor traffic violation. *Id.*; *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, 894 N.E.2d 1204, ¶ 7-8; *State v. Martin*, 2d Dist. Montgomery No. 20270, 2004-Ohio-2738, ¶ 10, citing *Terry*. " 'Reasonable, articulable suspicion' is a 'less demanding standard than

probable cause and requires a showing considerably less than preponderance of the evidence.' " *State v. Fears*, 8th Dist. Cuyahoga No. 94997, 2011-Ohio-930, ¶ 5, citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Scott*, 2d Dist. Clark No. 2013 CA 104, 2014-Ohio-4963, ¶ 12. A traffic violation gives an officer a reasonable articulable suspicion justifying a traffic stop, notwithstanding that the traffic stop may also have been a pretext to investigate suspected drug activity. *Mays* at ¶ 22; *State v. Wilcox*, 177 Ohio App.3d 609, 2008-Ohio-3856, 895 N.E.2d 597, ¶ 13 (2d Dist.); *State v. Cole*, 2d Dist. Montgomery No. 26576, 2015-Ohio-5295, ¶ 17.

{¶ 11} A stop of a person on a bicycle is governed by the same standards as any other traffic stop: an officer must have a reasonable, articulable suspicion that the operator has engaged in criminal activity, including a minor traffic violation. *State v. Brown*, 2d Dist. Montgomery No. 25204, 2012-Ohio-5532, ¶ 9, citing *State v. Roberts,* 2d Dist. Montgomery No. 23219, 2010-Ohio-300, ¶ 14.

{¶ 12} Consensual encounters occur when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away. *State v. Lewis,* 2d Dist. Montgomery No. 22726, 2009-Ohio-158, at ¶ 21, citing *United States v. Mendenhall,* 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The Fourth Amendment guarantees are not implicated in such an encounter. *State v. Taylor,* 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60 (2d Dist.1995), citing *Mendenhall* at 554. They are implicated, though, in an investigatory detention, i.e., *Terry* stop. "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave

or [was] compelled to respond to questions." *Lewis* at ¶ 22, citing *Mendenhall* at 553, and *Terry* at 19.

*The Trial Court Findings*

{¶ 13} The trial court found that, "[w]hen two uniform[ed] police officers in a police cruiser pass by a vehicle (whether an automobile or a bicycle) and then do a quick u-turn and catch up with the vehicle, drive along side it and 'request or demand' that the driver stop and pull over to talk, no reasonable person would believe that he was free to ignore the police and continue on his way down the street." The trial court further concluded that Officer Williams and his partner had approached Swift "for no apparent reason." The court concluded that a vehicle stop, including a bicycle stop, is not a consensual encounter, and that a "sensible person" would not believe he (or she) could "come and go freely" from such a stop, because it is made "with an implicit claim of right based on fault of some sort."

{¶ 14} The court found that a seizure had occurred when the officers stopped Swift and that there had been no probable cause or reasonable suspicion to justify the seizure. Having concluded that the stop violated the Fourth Amendment, the trial court suppressed the contraband discovered during the stop as "fruit of the unlawful stop."

## IV.    Analysis

{¶ 15}    Officer Williams testified the reason for the stop was Swift's "riding [his] bike a little bit towards the center of the street," and Williams described rolling down his window (the driver's-side window) to ask Swift if they could talk "real quick." Williams did not testify that Swift's bicycle-riding had violated any state law or city ordinance, and no traffic citation was issued. Williams also testified that the officers had not received any

reports regarding a bicycle-rider and were not dispatched to make contact with any bike-rider. In fact, when asked, "when you're making the stop for his [Swift's] safety and for staying too close to that center line, are you doing that just to get information?," Williams answered affirmatively.

{¶ 16} Based on this evidence and the trial court's finding that Swift was stopped "[f]or no apparent reason," the trial court reasonably concluded that the officers' traffic stop of Swift was not based on reasonable, articulable suspicion of criminal activity. The court also reasonably concluded that a reasonable person in Swift's position, having had officers pull alongside him while riding his bicycle and initiate a conversation, would not have felt free to ignore the officers' request to speak with him. Thus, the trial court's findings supported its decision to suppress the state's evidence.

{¶ 17} The State relies on *Michigan v. Chestnut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), in arguing that the officers' approach of Swift without lights or sirens and without blocking his intended course did not constitute a seizure. *Chestnut* involved police officers in a cruiser approaching and following alongside a pedestrian, who then began to run. The police accelerated to keep pace with the runner, but they did not attempt to interact with him or stop him until after he had discarded several packets that the officers surmised to be codeine. The Supreme Court held that the police conduct prior to the observation of "drug packets" – "which consisted of a brief acceleration to catch up with [defendant], followed by a short drive alongside him" – would not have led a reasonable person to believe that the officers were attempting to capture him or that he was not free to disregard the police presence.

{¶ 18} As we have frequently noted, and as *Chestnut* notes, the analysis of

whether a reasonable person would have concluded that he or she was restrained of his or her liberty under particular circumstances is very fact-sensitive and case-specific. *See, e.g., State v. Brown*, 2d Dist. Montgomery No. 26937, 2016-Ohio-4973; *State v. Ramey*, 2d Dist. Montgomery No. 26705, 2016-Ohio-607. Although *Chestnut* and Swift's case have the absence of cruiser sirens and lights in common, there are significant factual differences, most notably that Swift was on a bicycle rather than on foot, that he did not begin to "run," that he did not discard any suspicious material, and that the officers approached and interacted with him without witnessing any suspected illegal conduct.

{¶ 19} At oral argument, the State also argued that Swift's travel near the center of the roadway violated a city ordinance and, therefore, if the stop were not consensual, the officers had a reasonable articulable basis to stop Swift. However, the officers did not articulate such a basis for the stop at the hearing, and the trial court did not make any findings to support the existence of a traffic violation. In the absence of such evidence and findings, we cannot speculate whether a traffic violation occurred or whether it would have changed the outcome of these proceedings. Moreover, the officers' discovery of Swift's identity subsequent to the stop – which was the same last name as a caller to a person arrested in a drug case the day before – cannot justify a stop that occurred before the officers had that information.

{¶ 20} The assignment of error is overruled.

### V. Conclusion

{¶ 21} The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FAIN, J., concur.

Copies mailed to:

Ann M. Graber
Adelina E. Hamilton
Hon. Richard Skelton