[Cite as *State v. Whitten*, 2023-Ohio-973.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio/City of Sylvania                     Court of Appeals No.  L-22-1131

      Appellee                                     Trial Court No.  TRC2003757

v.

William Whitten                                    **DECISION AND JUDGMENT**

      Appellant                                    Decided:  March 24, 2023

* * * * *

Joseph W. Westmeyer, III, for appellant.

* * * * *

**OSOWIK, J.**

**{¶ 1}** Appellant William Whitten appeals the April 22, 2022 judgment of the
Sylvania Municipal Court that sentenced him to 180 days, with 139 days suspended
upon certain terms and conditions of probation.  The court also imposed a fine of
$375 and costs as well as a 12-month license suspension.

**{¶ 2}** Whitten presents a single assignment of error for our review:

The trial court erred in denying appellant's motion to suppress statements made prior to being properly mirandized.

**Facts**

**{¶ 3}** On November 21, 2020, at 12:50 a.m., Whitten was driving his vehicle near the intersection of Holloway and Garden Road in Lucas County when he encountered an OVI (Operating a Vehicle under the Influence of alcohol) checkpoint.

**{¶ 4}** When authorities approached his vehicle, appellant was unable to produce a driver's license. He was then directed to a diversion area. It is at this point that he interacted with Lucas County Sheriff Deputy Bretzloff. The deputy was assigned to work the diversion area of this checkpoint. The deputy ran Whitten's personal information through the LEADS (Law Enforcement Automated Data System) system. It was discovered that his license was under suspension and it appeared that he had two warrants for his arrest from the city of Toledo. Once the warrants were verified, the deputy testified that he may not have arrested appellant on these outstanding warrants. He further indicated that it was the sheriff's departmental policy sometimes to simply issue a summons to appear for these outstanding warrants rather than to transport suspects, particularly during the pandemic.

2.

{¶ 5} While another deputy checked on these warrants, Bretzloff asked appellant if he had anything to drink that night. Whitten responded that he did not, to which the deputy replied that "your eyes are really glossy and bloodshot." Appellant stated that he was tired.

{¶ 6} Based upon this interaction, Bretzloff administered the horizontal gaze nystagmus test. The test did not reveal any clues of impairment.

{¶ 7} The deputy then asked Whitten to "spin around, I'm going to pat you down for my safety." The deputy told appellant to put his arms "straight back." He then conducted a cursory pat-down and simultaneously asked Whitten "is there anything in the car I need to know about?" Appellant admitted that there was some marijuana in the vehicle and further admitted, while being handcuffed, that he had smoked a marihuana cigarette (joint) about three hours prior.

{¶ 8} In the video admitted into evidence, Bretzloff appears to place and lock handcuffs on Whitten and states "right now I'm just going to detain you." Then, apparently satisfied with the pat-down, removes the handcuffs ten seconds later. He then asks Whitten to perform more field sobriety tests.

{¶ 9} Ultimately, Whitten was charged with a violation of R.C. 4511.19(A)(1)(a) and (A)(2) operating a vehicle under the influence of alcohol or drugs and with a violation of R.C. 4510.111, driving under suspension.

3.

## Analysis

{¶ 10} Appellant filed a motion to suppress any statements and all evidence obtained from the illegal and unconstitutional questioning as fruit of the poisonous tree. More specifically, at the suppression hearing, appellant confined his challenge to the encounter with the deputy prior to the walk-and-turn and one-leg stand test.

{¶ 11} Appellant contends that he was in custody when he made an incriminating statement to the police and should have been given proper *Miranda* warnings before he was questioned.

## Standard of Review

{¶ 12} Appellate review of a trial court's denial of a motion to suppress presents mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *Id.* Thus, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* The appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *Id.*

4.

**Investigatory Detention**

{¶ 13} The Fourth Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, protects people against unreasonable searches and seizures. Article I, Section 14 of the Ohio Constitution is almost identical to the Fourth Amendment, and affords Ohioans coextensive protections against unreasonable searches and seizures. *See State v. Robinette*, 80 Ohio St.3d 234, 245, 685 N.E.2d 762 (1997).

{¶ 14} For a search or seizure to be reasonable under the Fourth Amendment, it must be based upon probable cause and executed pursuant to a warrant. *State v. Moore*, 90 Ohio St.3d 47, 49, 734 N.E.2d 804 (2000). A search is unreasonable when police lack a valid warrant and no exception to the warrant requirement applies. *See Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). *State v. Gregory*, 6th Dist. Lucas Nos. L-21-1106, L-21-1107, 2023-Ohio-331, ¶ 72-75.

{¶ 15} At the outset, we note that appellant does not contest the constitutionality of the OVI checkpoint. Highway checkpoint stops are designed to detect and deter drunk driving and have been held to not violate the Fourth Amendment, even in the absence of individualized suspicion, if it involves an initial stop and brief detention of all motorists. See *Michigan v. Sitz*, 496 U.S. 444, 453, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990).

{¶ 16} Since the United States Supreme Court issued its decision in *Sitz*, a majority of state courts have followed the balancing analysis and have concluded that

5.

roadblocks may survive constitutional scrutiny if they are operated under guidelines which minimize intrusiveness and limit officers' discretion. Ohio is among the majority of jurisdictions who have upheld the constitutionality of OVI checkpoints. *State v. King*, 6th Dist. Wood No. WD-19-013, 2020-Ohio-3065, ¶ 34.

## Custodial interrogation

{¶ 17} In *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court established procedural safeguards for securing the privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. What are now commonly known as *Miranda* warnings are intended to protect a suspect from coercive pressure present during a custodial interrogation. *Id.* A custodial interrogation is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' If a suspect provides responses while in custody without having first been informed of his or her *Miranda* rights, the responses may not be admitted at trial as evidence of guilt. *Id.* at 479.

{¶ 18} Roadside questioning of a motorist detained pursuant to a routine traffic stop does not usually constitute a "custodial interrogation" for purposes of *Miranda*. *State v. Reynolds,* 6th Dist. Wood No. WD-21-084, 2022-Ohio-3506, ¶ 49-52. In this respect, questioning incident to an ordinary traffic stop is quite different from stationhouse interrogation, which frequently is prolonged.

6.

{¶ 19} The relevant inquiry is whether a reasonable person in the suspect's position would have understood himself or herself to be *in custody*. This nuance is important and well reasoned. If the inquiry were whether the driver felt free to leave, then every traffic stop could be considered a custodial interrogation. And a law enforcement officer, in the midst of investigating a traffic stop and performing all its attendant procedures, would not consider a driver free to leave unless given permission. But "not free to leave" and "in custody" are distinct concepts. *State v. Ferrell*, 2017-Ohio-9341, 91 N.E.3d 766 (11th Dist.) ¶ 30.

{¶ 20} When officers ask questions necessary to secure their own safety or the safety of the public as opposed to questions designed solely to elicit testimonial evidence from a suspect, they do not need to provide the warnings required by *Miranda*. *New York v. Quarles*, 467 U.S. 649, 659, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984). *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 113.

{¶ 21} In *Quarles*, the U.S. Supreme Court applied this exception to the *Miranda* requirement when an officer cuffed a suspect after a pursuit in a supermarket. The suspect had an empty holster, and before reading him his rights, the officer asked him where the gun was.

{¶ 22} In *Maxwell*, officers executing an arrest warrant found the suspect hiding in a crawlspace and for their safety, inquired if he had a weapon or had one near him. The Ohio Supreme Court held that the public safety exception to *Miranda* did *not* apply

7.

because the officers had already confirmed that no one else was in the home and Maxwell was in handcuffs at the time of the inquiry. *Id.* Nevertheless, the court found that the admission of his statements in response was harmless error. *Id.* at ¶ 122–123.

{¶ 23} A pat-down search, without more, does not transform an investigatory stop into custody for *Miranda* purposes. *State v. Cross,* 2d Dist., Montgomery, No. 25838, 2014-Ohio-1534, ¶ 12-14.

{¶ 24} In this case, the deputy told appellant to "spin around, I'm going to pat you down for my safety." The deputy told appellant to put his arms straight back. He conducted a cursory pat-down while simultaneously asking Whitten "is there anything in the car I need to know about?" As appellant is making an admission that there is a "little bit of weed in the door" and having smoked a joint several hours earlier, Bretzloff places handcuffs on him and tells Whitten that "for now, I'm just going to detain you." Ten seconds later, the deputy removes the handcuffs and asks appellant to perform more field sobriety tests.

{¶ 25} The trial court found that, after consideration of the totality of the circumstances, Whitten was not in custody at the time he encountered Deputy Bretzloff and responded to his questions. The court further found that, under the circumstances of this encounter, a reasonable motorist in appellant's position at the time would understand that he was simply being detained and not subject to arrest at the moment of the encounter.

8.

**{¶ 26}** Considering the totality of the circumstances here, we conclude Whitten was not in custody when asked about anything in his car that he should disclose to the deputy and that no constitutional violation occurred.

**{¶ 27}** We find that these facts are supported by competent, credible evidence and support a conclusion by the trial court that the questions posed by the deputy in this encounter were not part of a custodial interrogation which would trigger rights established under the Fifth Amendment to the United States Constitution.

**{¶ 28}** Therefore, we find appellant's sole assignment of error not well-taken and denied.

## Conclusion

**{¶ 29}** On consideration whereof, the judgment of the Sylvania Municipal Court is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24(A)(4).

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
                                                 JUDGE

Myron C. Duhart, P.J.

_____

Charles E. Sulek, J.                              JUDGE
CONCUR.

_____
                                                 JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.