[Cite as *State v. Cook*, 2012-Ohio-111.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                    :

     Plaintiff-Appellee                      :                C.A. CASE NO.    24524

v.                                                          :                T.C. NO.    10CR2375

YVONNE D. COOK                            :                (Criminal appeal from
                                                                            Common Pleas Court)

     Defendant-Appellant                   :

                                                                  :

· · · · · · · · · ·

**O P I N I O N**

Rendered on the ____13th____ day of ____January____, 2012.

· · · · · · · · · ·

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, P. O. Box 291771, Kettering, Ohio 45429
     Attorney for Defendant-Appellant

· · · · · · · · · ·

DONOVAN, J.

{¶ 1}  Defendant-appellant Yvonne D. Cook appeals from her conviction and sentence for one count of intimidation of a crime victim, in violation of R.C. 2921.04(B), a felony of the third degree; two counts of felonious assault, in violation of R.C.

2903.11(A)(1) & (2), both felonies of the second degree; and one count of having a weapon while under disability, in violation of R.C. 2923.13.(A)(2), a felony of the third degree. Each count of felonious assault was accompanied by a firearm specification.

{¶ 2} Cook filed a timely notice of appeal with this Court on March 9, 2011.

I

{¶ 3} The incident which forms the basis for the instant appeal occurred on June 19, 2010, at approximately 4:00 a.m., when Dayton Police responded to a 911 call reporting that a man, later identified as Terence Bolton, had been shot in the DeSoto-Bass apartment complex located in southwest Dayton, Ohio. After a brief investigation, officers began looking for a woman going by the name "Granny," who was purported to have shot Bolton. Dayton Police Officer Jennifer Stack soon contacted Cook at her nearby home and identified her as "Granny." For her own safety, Officer Stack handcuffed Cook and patted her down. Officer Stack then placed Cook in the back of the police cruiser.

{¶ 4} While Cook was in the back of the cruiser, Officer Stack engaged her in a brief conversation, stating "Terry said you shot him." Cook denied shooting Bolton. Shortly thereafter, Officer Stack spoke to a witness named Alves who stated that she had seen Cook with a firearm earlier. Officer Stack asked Cook for consent to a search of her apartment, and Cook provided verbal consent. Thereafter, Officer Stack provided Cook with a consent form for the search of her apartment. Cook signed the consent form. Cook, however, was never advised of her *Miranda* rights by Officer Stack.

{¶ 5} Detective Darryl Smith arrived at the scene at approximately 6:00 a.m. and was informed that Cook had signed a consent to search form. Two homicide detectives

were already on scene when Detective Smith arrived, and no evidence was adduced that they advised Cook of her rights. After searching her apartment, Detective Smith spoke with Cook while she sat cuffed in the rear of the cruiser. Detective Smith did not advise Cook of her *Miranda* rights prior to questioning her. Detective Smith asked Cook a series of questions about what happened and Cook provided a significant amount of incriminating information about the incident. Detective Smith testified that he spoke to Cook for approximately five minutes. After the interview, Cook was transported to the Dayton Safety Building at about 6:30 a.m.

{¶ 6} Prior to interviewing Cook again at the Safety Building, Detective Smith presented Cook with a pre-interview form which advised her of her constitutional rights. Detective Smith read the contents of the form to Cook, and she signed it. Cook indicated to Detective Smith that she had completed ten years of schooling. Cook also informed Smith that she could read.

{¶ 7} After Cook signed the pre-interview form, she was questioned a second time by Smith. The question and answer session lasted about thirty minutes. Cook provided Detective Smith detailed information regarding the events surrounding the shooting, which was consistent with the information Cook gave at the scene about an hour earlier. Thereafter, Cook was transported to jail.

{¶ 8} On August 27, 2010, Cook was indicted for one count of intimidation of a crime victim, two counts of felonious assault, each count accompanied by a firearm specification, and one count of having a weapon while under disability. At her arraignment on August 31, 2010, Cook stood mute, and the trial court entered a plea of not guilty on her

behalf.

{¶ 9} Cook filed a motion to suppress on September 20, 2010. A hearing was held on said motion on November 5 and 15, 2010. On January 21, 2011, the trial court issued a decision in which it sustained Cook's motion to suppress with respect to the statements she made to Detective Smith while she was seated in the rear of Officer Stack's cruiser before she had been *Mirandized*. The trial court, however, overruled Cook's motion regarding the statements she made to Detective Smith at the Safety Building after she had been *Mirandized* and signed the pre-interview form.

{¶ 10} On February 15, 2011, Cook pled no contest to all of the counts in the indictment. The trial court subsequently found her guilty on all counts and sentenced her to an aggregate prison term totaling six years.

{¶ 11} It is from this judgment that Cook now appeals.

II

{¶ 12} Cook's sole assignment of error is as follows:

{¶ 13} "WHETHER THE STATEMENTS APPELLANT COOK MADE AFTER RECEIVING A MIRANDA WARNING CONFIRMING HER PRE-MIRANDA STATEMENTS CAN BE USED AGAINST HER."

{¶ 14} In her sole assignment, Cook contends that the post-*Miranda* statements she made to Detective Smith while in custody at the Safety Building were a mere continuation of the initial statements she made to the detective earlier at the scene without the benefit of *Miranda* warnings, and therefore, should have been suppressed as well. Thus, Cook argues that the trial court erred when it overruled that portion of her motion to suppress regarding

her post-*Miranda* statements.

{¶ 15} In regards to a motion to suppress, "the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653. The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac* (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citing *State v. Retherford* (1994), 93 Ohio App.3d 586. Accepting those facts as true, the appellate court must then determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. Id.

{¶ 16} In support of her argument that the trial court erred when it found that her post-*Miranda* statements were admissible, Cook relies on the United States Supreme Court's holding in *Missouri v. Seibert* (2004), 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 642. In *Seibert*, the U.S. Supreme Court considered whether the technique of successive interrogations, first unwarned and then warned, violated a defendant's *Miranda* rights.

{¶ 17} In *Seibert*, a police officer questioned the defendant without *Miranda* warnings for approximately thirty to forty minutes. The defendant made an admission, and the officer gave the defendant a twenty-minute break. After the break, the same officer returned, gave the defendant *Miranda* warnings, obtained a signed waiver, and resumed questioning. During the second round of questioning, the officer confronted the defendant with her pre-*Miranda* statements, and the defendant repeated her admission. The court referred to this testimony as "question first" and stated that "[t]he object of question first is

to render *Miranda* warnings ineffective by waiting for a particularly opportune time to give them, after the suspect has already confessed." Id. at 611, 124 S.Ct. 2601, 159 L.Ed.2d 643. The court ultimately held that the post-warning statements were inadmissible. Id. at 617.

{¶ 18} "In a question first scenario in which the *Miranda* warning is withheld and the suspect makes inculpatory statements, the risk is that the warning will mean less when it is eventually recited." *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255. "The threshold issue when interrogators question and warn later is thus whether it would be reasonable to find that in these circumstances the warning could function 'effectively' as *Miranda* requires. Could the warnings effectively advise the suspect that he had a real choice about giving an admissible statement at that juncture? Could they reasonably convey that he could choose to stop talking even if he had talked earlier? For unless the warnings could place a suspect who has just been interrogated in a position to make such an informed choice, there is no practical justification for accepting the formal warnings as compliance with *Miranda*, or for treating the second stage of interrogation as distinct from the first, unwarned and inadmissible segment." *Seibert*, 542 U.S. at 611-612, 124 S.Ct. 2601, 159 L.Ed.2d 643.

{¶ 19} In support of its argument that the trial court did not err in ruling Cook's post-warning statement admissible, the State relies on *Oregon v. Elstad* (1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222. The court in *Elstad* held admissible a post-*Miranda* warning confession that followed a pre-warning admission solicited by an officer while the suspect was in custody.

{¶ 20} "*Elstad* and *Seibert* stand on opposite sides of the line defining where

pre-warning statements irretrievably affect post-warning statements. Still, that line cannot be said to be bright or sharply defined." *Farris*, 109 Ohio St.3d at 523, 2006-Ohio-3255.

**{¶ 21}** In *Elstad*, police went to the home of an eighteen-year old defendant with a warrant for his arrest. While one officer went to the kitchen to explain to the suspect's mother that her son was being arrested in connection with a burglary that occurred at the home of a neighbor, another officer stayed with Elstad in the living room and had a brief discussion with him. The officer explained the neighbor's house had been robbed and that he thought Elstad was involved. Elstad stated to the officer "Yes, I was there." *Elstad*, 470 U.S. at 301, 105 S.Ct. 1285, 84 L.Ed.2d 222.

**{¶ 22}** Police took Elstad to the police station, and about one hour later, interviewed him in the office of one of the officers. The police administered *Miranda* to Elstad for the first time without mentioning his previous admission. Elstad subsequently waived his rights and made a full, detailed confession regarding his involvement in the burglary. Both confessions were admitted into evidence at trial, and Elstad was convicted. His conviction, however, was reversed by an Oregon appellate court who found that the post-*Miranda* confession was inadmissible. *Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222.

**{¶ 23}** The U.S. Supreme Court reversed the holding of the Oregon appellate court and allowed the post-*Miranda* confession to be used. Id. The *Elstad* court noted that "a finding of voluntariness for the purposes of the Fifth Amendment is a threshold requirement in determining whether the confession may be admitted in evidence." The *Elstad* Court emphasized that "there was no warrant for presuming coercive effect where the suspect's initial inculpatory statement, though technically in violation of *Miranda*, was voluntary." Id.

at 318, 105 S.Ct. 1285, 84 L.Ed.2d 222. Instead, "*the relevant inquiry is whether, in fact, the second statement was also voluntarily made*." Id. This is determined by an examination of the surrounding circumstances and the entire course of police conduct. Accordingly, the *Elstad* Court held that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings.

{¶ 24} In *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, the Ohio Supreme Court found that a defendant's post-*Miranda* confession was inadmissible when he was questioned by a police officer and made pre-*Miranda* admissions. During a routine traffic stop, an officer ordered the defendant out of the vehicle after smelling an odor of marijuana emanating from the defendant's vehicle. The officer conducted a pat-down search of the defendant, but found no drugs.

{¶ 25} The officer then ordered the defendant to sit in the front seat of the police cruiser. While they were seated in the cruiser, the officer told the defendant that he had smelled marijuana. Without administering *Miranda* warnings, the officer asked the defendant about the smell. After the defendant provided an explanation, the officer told the defendant that he was going to search the car, and specifically asked whether any drugs or drug devices were in the car. The defendant admitted that there was a marijuana pipe in his trunk. The officer testified that after the defendant made these statements, he immediately administered *Miranda* warnings, but did not tell the defendant that his previous admissions could not be used against him. After he administered *Miranda*, the officer asked the defendant the same questions and obtained the same responses regarding the location of

the drug paraphernalia.

{¶ 26} Applying the elements discussed in *Seibert*, the Ohio Supreme Court compared Farris's case to the facts of *Seibert* and *Elstad*. The Court held that the interrogation was much closer to *Seibert* than to *Elstad*. Although the whole process was extremely brief, "[i]t would have been reasonable to regard the two sessions as parts of a continuum, in which it would have been unnatural to refuse to repeat at the second stage what had been said before." *Seibert,* at 616–617, 124 S.Ct. 2601, 159 L.Ed.2d 643. Although the questioning was very simple, not in-depth, and not lengthy, it covered exactly the same subject both before the warning and after the warning. Both of Farris's statements were made in the police cruiser to the same police officer within moments of each other. Temporally and substantively, the officer's questioning of Farris constituted a single interrogation. The officer made no attempt to tailor the *Miranda* warning he eventually gave to the particular situation and did not convey any distinction whatsoever between statements that might come after the warning and those that came before. Thus, the Ohio Supreme Court held that Farris was not in a position to make a *Seibert* informed choice regarding the waiver of his constitutional rights. Importantly, the court held that the intent of the officer doing the questioning is *not relevant* in a *Miranda* analysis. Rather, the suspect's state of mind is the key.

{¶ 27} After police arrived at the scene of the shooting, Cook was taken into custody by Officer Stack, handcuffed, and placed in the back of a police cruiser. After she waited in the rear of the cruiser for approximately an hour and a half, Cook was questioned by Detective Smith who did not administer *Miranda* warnings to her. Cook made admissions

regarding her role in the shooting. According to Detective Smith, the pre-*Miranda* interview lasted approximately five minutes, after which Cook was transported to the Safety Building. The second interrogation occurred shortly thereafter. Prior to the second interrogation, also conducted by Detective Smith, Cook was informed of her constitutional rights which she subsequently waived. Detective Smith testified that the second interrogation was substantially longer than the first. Specifically, Detective Smith testified that while the second interview covered the same event as the first interview, the second interview "started at the beginning and went through to the end."

{¶ 28} The *Seibert* Court identified "a series of relevant factors that bear on whether *Miranda* warnings delivered mid-stream could be effective enough to accomplish their object: [1] the completeness and detail of the questions and answers in the first round of interrogation; [2] the overlapping content of the two statements; [3] the timing and setting of the first and second; [4] the continuity of police personnel; and [5] the degree to which the interrogator's questions treated the second round as continuous with the first." Id. at 615, 124 S.Ct. 2601, 159 L.Ed.2d 643. Accordingly, in such a scenario, the post-*Miranda* warning statements are inadmissible because "the earlier and later statements are realistically seen as parts of a single unwarned sequence of questioning." *State v. Tate*, Mahoning App. No. 07 MA 130, 2008-Ohio-3245, citing *Seibert*, 542 U.S. at 612, 124 S.Ct. 2601, 159 L.Ed.2d 643.

{¶ 29} At the suppression hearing, the State bore the burden of establishing that Cook's admissions from the second interview were voluntary, and therefore, admissible. Based on the record before us, the State failed to meet its burden in that regard. Upon

review, we conclude that the instant case falls on the *Seibert* side of the *Elstad/Seibert* continuum. The record establishes that although the second interview was temporally longer than the first, both interviews by Detective Smith were thorough and designed to elicit incriminating details regarding Cook's involvement in Bolton's shooting. We recognize that the interrogations were conducted in separate locations, but unlike *Elstad*, Cook was not in the comfort of her living room initially. Rather, Cook had been handcuffed and seated in the rear of a locked cruiser for almost two hours. Homicide detectives had been called to the scene and a search of Cook's residence was conducted. The content elicited in both interviews clearly overlapped. It is also important to note that Detective Smith conducted both the pre-*Miranda* and post-*Miranda* interviews of Cook. On the record before us, it appears that the post-*Miranda* questioning of Cook was merely a continuation of the pre-*Miranda* interview initiated by Detective Smith at the crime scene. The second post-*Miranda* interview simply memorialized the earlier pre-*Miranda* admissions made by Cook. The record contains no explanation regarding how the prior interview affected any subsequent statements that Cook made after being *Mirandized*. Furthermore, it is apparent from the record that the police failed to inform Cook about how her privilege against self-incrimination applied to her pre-*Miranda* admissions.

{¶ 30} We conclude that given the state of this record, Cook was subject to essentially one continuous custodial interrogation conducted by Detective Smith which was tainted by the lack of an initial *Miranda* warning prior to the first interrogation. This is clearly a case of "question first," *Mirandize* later. Accordingly, we find that the trial court erred when it failed to suppress the statements made by Cook during the second half of the

interrogation.

{¶ 31} Cook's sole assignment of error is sustained.

III

{¶ 32} Cook's sole assignment of error having been sustained, the judgment of the trial court is reversed, and this matter is remanded for proceedings consistent with this opinion.

. . . . . . . . . .

FROELICH, J., concurs.

HALL, J., dissenting:

{¶ 33} Because I am of the opinion that the interrogations in this case are much more like *Oregon v. Elstad* (1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222, than *Missouri v. Seibert* (2004), 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643, I would affirm the trial court's denial of the defendant's Motion to Suppress statements she made in an interview room at the police station after acknowledging and waiving *Miranda* warnings. The five-minute questioning in the rear of a police car in the vicinity of the scene of the shooting differs greatly in time, place, and circumstance from the interview, more than a half hour later, in a police station office with written *Miranda* warnings. The trial court did not conclude that the post-*Miranda* interview was a continuation of the pre-*Miranda* questioning, nor would I. Therefore, I dissent.

. . . . . . . . . .

Copies mailed to:

R. Lynn Nothstine
J. David Turner
Hon. Timothy N. O'Connell