[Cite as *State v. Jirac*, 2016-Ohio-8187.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                 :

                                     :     Appellate Case No. 27003

         Plaintiff-Appellant          :

                                       :     Trial Court Case No. 15-CR-756

v.                                   :

                                       :     (Criminal Appeal from

HASSAN O. JIRAC            :     Common Pleas Court)

                                       :

         Defendant-Appellee       :

                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of December, 2016.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

V. GAYLE MILLER, 130 West Second Street, Suite 1624, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . .

FAIN, J.

{¶ 1} The State appeals from an order of the trial court suppressing evidence.

The State contends that the trial court erred by suppressing statements made to the

police, based on an incorrect conclusion that the defendant was in custody at the time he was questioned before being advised of his constitutional rights. Defendant-appellee Hassan Jirac has not filed a brief.

{¶ 2} We conclude that the trial court did not err in suppressing the evidence. The State's sole assignment of error is overruled, and the suppression order is Affirmed.

## I. Interception of UPS Package Leads to Interrogation

{¶ 3} The trial court made the following findings in support of its decision to sustain the motion to suppress:

I note that on October 21, 2013, and really unexplained fashion, a large quantity of Cathinone, known by the nickname of khat, which I'm going to use throughout the rest of this decision. A large quantity of that Schedule I drug was intercepted in Lexington, Kentucky. In fact the amount of khat that we are dealing with is nine kilos. Upon the interception of the khat in Lexington, Kentucky, a decision was made to allow the khat to continue to its destination at the Centerville, Ohio UPS office, located on State Route 725, here in Montgomery, Ohio, so that the person picking up the khat could be intercepted.

In order to accomplish the interception, a group of officers was assembled and placed in and around the Centerville UPS location. Special Agent Richard Miller, who was, and perhaps still is, assigned to the range task force was the lead investigator. Agent Miller, along with Montgomery County Detective O'Connell were posted inside the UPS store to await the

person who was going to pick up the khat. Mr. Jirac did arrived [sic] to pick up the package containing the khat. Mr. Jirac was allowed to obtain possession of the package, and to walk towards the UPS exit. Mr. Jirac, however, was not allowed to leave the UPS store, as Agent Miller and Detective O'Connell intercepted him before he was able to exit the store. Agent Miller informed Mr. Jirac why he was being detained. Mr. Jirac, after being informed of the reason for the detention, was taken through the store and out the back door, so that Agent Miller could talk to Mr. Jirac in a more private setting.

Mr. Jirac was informed that he was not under arrest, but as Agent Miller conceded during examination, conducted by the Court, Mr. Jirac was not free to leave. And had Mr. Jirac indicated he was not going to cooperate and intended to simply walk away, Mr. Jirac would have been arrested.

Agent Miller's plan, in any event, and understandably, was to gain Mr. Jirac's cooperation, so that the person who had hired Mr. Jirac to pick up the khat could be identified, with the obvious goal being to move up the so-called food chain. And I note that Mr. Jirac informed Agent Miller of the name of the person for whom he had picked up the khat, and that he had been paid the sum of $300 for that particular service. All of that information was obtained [by] Agent Miller as a result of Mr. Jirac being questioned about the circumstances under which he had arrived at the UPS store to pick up the khat. And I note that this interview occurred without Mr. Jirac being provided *Miranda* warnings.

Mr. Jirac agreed to cooperate and he provided Agent Miller with again the details of his involvement regarding the pick-up that had occurred. Mr. Jirac, as part of his cooperation, made telephone calls to the person who had hired him to pick up the khat, in the hope of creating a scenario so that this person could be implicated and arrested. The attempt to do so, however, failed primarily it seems because Agent Miller was not able to obtain the cooperation of the Columbus Police Department. Evidently even though we are dealing with nine kilos of this Schedule I drug, that was an insufficient quantity for the Columbus Police Department to have sufficient interest to be involved in the process.

At one point we know, based upon that which I heard during my review of the audio tape, we know that Mr. Jirac was in the back of a van and they were proceeding towards Columbus. But ultimately that all came to a halt because again the Columbus Police Department was not willing to provide cooperation to Agent Miller. And so ultimately Mr. Jirac was brought back to a Montgomery County Sheriff's Office sub-station and it was at the sub-station that Mr. Jirac was ultimately provided his *Miranda* warnings and interviewed once again by Agent Miller.

Agent Miller informed Mr. Jirac of his *Miranda* Rights using a pre-interview form, which was marked and introduced into evidence at the hearing as State's Exhibit 1. Mr. Jirac waived his *Miranda* Rights and provided a confirming statement of his involvement in the pick-up of the

khat. And when I say confirming statement, he simply reiterated that which had already been revealed during the previous contact and the previous interview conducted by Agent Miller in the effort to obtain Mr. Jirac's cooperation upon his interception at the UPS store. Agent Miller upon obtaining Mr. Jirac's *Miranda* waiver told Mr. Jirac we are going to go over "stuff we already talked about." Additionally, Mr. Jirac at one point during the *Miranda* interview, deviated from what he had said in the non-mirandized interview with Agent Miller pointing out the discrepancy and then chastising Mr. Jirac for the indicated discrepancy.

Ultimately, the interview ended. Mr. Jirac, it seems, at the end of the interview complained of chest pains, resulting in his transport to the hospital. Mr. Jirac obviously was released from the hospital. And upon his release from the hospital he was not arrested. Agent Miller thereafter did contact Mr. Jirac on an occasion or two concerning Mr. Jirac's continued cooperation. Evidently that did not lead to any further cooperation by Mr. Jirac. And ultimately Mr. Jirac was indicted for the possession of the khat. Again the nine kilograms that are at issue in this case.

These facts raise the following issues. Was Mr. Jirac in custody when he was initially interviewed without being provided *Miranda* warnings? And number two, was the mirandized interrogation of Mr. Jirac a so-called interview first, mirandized later scenario triggering the suppression of the statements Mr. Jirac made during the second mirandized interview?

Going into the first issue - - I want to go back to the facts just for a

moment. I do want to note that as a final factual finding that between the time that Mr. Jirac was intercepted leaving the UPS store and when he was Mirandized and interviewed again by Agent Miller, that several hours had passed. And during that time Mr. Jirac had been in the presence of Agent Miller and other officers for a considerable period of time. It was also noted that when Mr. Jirac was interviewed outside the UPS store, outside the back door of the UPS store, we know that Agent Miller was there, and that there were several other officers nearby who were part of the operation, which led to Mr. Jirac being intercepted as he was attempting to leave the UPS store with the quantity of khat that he had picked up.

Transcript pgs. 55-59.

## II. The Course of Proceedings

{¶ 4}  Jirac was indicted on one count of Aggravated Possession of a Controlled Substance, a felony of the first degree, in violation of R.C. 2925.11(A). Jirac moved to suppress the statements he made before he was given the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  The trial court conducted a hearing on the motion to suppress, at which Special Agent Richard Miller testified as the only witness.

{¶ 5} Based on the evidence presented, the trial court found that Jirac was in custody at the time of the questioning and sustained the motion, after reviewing the factors discussed in *State v. Sell*, 2d Dist. Montgomery No. 26458, 2015-Ohio-1940, ¶¶ 15-18, *State v. Gaddis*, 2d Dist. Montgomery No. 24007, 2011-Ohio-2822,   and *State v.*

*Estepp*, 2d Dist. Montgomery No. 16279, 1997 WL 736501 (Nov. 26, 1997), including the location of the questioning, whether the defendant was a suspect at the time of the questioning, whether the defendant's freedom to leave was restricted, whether the defendant was told he was under arrest, whether threats or physical intimidation were utilized, whether the police dominated the interrogation, the defendant's reason for being at the location where the questioning took place, and whether any neutral parties were present at any point during the questioning. Applying these factors, the trial court found that the questioning took place in surroundings where Jirac would not have been comfortable or felt free to leave. At the time of questioning, Jirac was a suspect. Jirac's freedom of movement was restricted. Jirac was not handcuffed, was told he was not under arrest, and no threats or physical intimidation were utilized. The court found that the police did dominate the interrogation, with the goal of obtaining Jirac's cooperation, and no neutral parties were present. Jirac's purpose of being at the UPS Store was to pick up the package, and the purpose of going behind the store was to question Jirac regarding the khat in his possession. The trial court further found that "though Mr. Jirac was not tricked or coerced into making a statement, Agent Miller indicated to him that his cooperation could be helpful regarding criminal charges relating to Mr. Jirac's possession off [sic] the khat." T. at 65. This finding led the trial court to conclude that the officer's "statement regarding cooperation would have communicated to a reasonable person that he was going to be arrested and charged for the possession of the controlled substance he had just picked up." T. at 65.

{¶ 6} Based on these facts, the trial court concluded, "[t]he *Estep* factors, though not all pointing to a custody determination, lead in the Court's mind, to the conclusion that

when Agent Miller interviewed Mr. Jirac behind the UPS store, and as he interviewed him throughout the course of the remaining hours until he was finally mirandized, a reasonable person in Mr. Jirac's situation would have concluded there was a restraint of his freedom of movement to the extent associated with a formal arrest. He was in fact in custody, for *Miranda* purposes." T. at 65-66.

{¶ 7} The trial court also reviewed the case law applicable to the issue of whether in-custody non-Mirandized admissions taint admissions made subsequent to the administration of *Miranda* warnings, including our opinion in *State v. Cook*, 2d Dist. Montgomery No. 24524, 2012-Ohio-111, citing *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), and *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). The trial court explained its reasoning as follows:

The *Seibert* Court identified a series of relevant factors that bear on whether *Miranda* warnings delivered midstream could be effective enough to accomplish their object. One, the completeness in detail of the questions and answers in the first round of interrogation. The overlapping content of the two statements. The timing and setting of the first and second. Four, the continuity of police personnel, and five, the degree to which the interrogator's questions treated the second round as continuance with the first. Accordingly, in such a scenario, the post-*Miranda* warning statements are inadmissible because the earlier and later statements are realistically seen as part of a single unwarned sequence of questioning.

And so I'm going to go through those factors in this case. And though we don't know the full detail of Agent Miller's pre-*Miranda* questioning, we

know the questions produced in admission from Mr. Jirac that he had traveled from Columbus in his cab to the UPS store to pick up the khat for a person identified by Mr. Jirac during the course of Agent Miller's interview, and that Mr. Jirac's fee for this service was $300.00.

Going to the second factor, the content of the two interrogations, the pre-*Miranda* interrogation and the post-*Miranda* interrogation certainly overlap. In fact as stated by Agent Miller in the mirandized portion of the interview, he says basically we're going to talk about the stuff we've already talked about.

Going to the third factor, the timing and setting of the two interviews reveals in essence once [sic] continuous interview. By the time Mr. Jirac was Mirandized, he had been with Agent Miller and the other officers for a number of hours. There had already been an interview where the details of Mr. Jirac's possession of the khat had been revealed. There had been this effort for cooperation which failed. And finally, when the mirandized statement ultimately occurred, it was at the end of all of that, and part of one continuous interaction with the officers.

Going to the fourth factor, Agent Miller was the primary officer involved in each interrogation.

And finally going to factor five, Agent Miller by stating in the post-*Miranda* interview that "we are going to go over the stuff we already talked about", and by pointing out to Mr. Jirac the discrepancy between his initial statement and his statement that he gave post-*Miranda*, that certainly

reveals that the two interviews were in essence not two interviews, but one continuous effort by Agent Miller, to obtain information from Mr. Jirac that was in essence one continuous interview.

It is based upon this analysis concluded that Mr. Jirac's post-*Miranda* statements are so tainted by his pre-*Miranda* statements that the post-*Miranda* statements must be suppressed. So all the statements will be suppressed.

Transcript pgs. 68-70.

{¶ 8} From the order of the trial court suppressing Jirac's statements, the State appeals.

### III. Standard of Review

{¶ 9} Appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting the facts as true, the reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case*. Id.* Therefore, an appellate court reviews the trial court's application of the law to its factual findings based on a de novo standard of review. *State v. Belton*, Ohio Supreme Court Slip Opinion No. 2016-Ohio-1581, ¶ 100.

**IV. Based Upon the Trial Court's Findings, which Are Supported by Evidence in the Record, the Trial Court Did Not Err in Concluding that Jirac's Statements Were Made During a Custodial Interrogation**

{¶ 10} The State argues that Jirac's statements were made during a consensual encounter, and therefore no *Miranda* warnings were necessary prior to questioning. The State claims that the trial court incorrectly determined that Jirac was in custody at the time he was initially questioned at the UPS store. We agree with the findings of the trial court that Jirac's statements at the UPS store were made during a custodial interrogation, before he was given *Miranda* warnings. We recently reviewed the factors to consider to determine if a defendant is in custody for *Miranda* purposes as follows:

"The procedural safeguards prescribed by *Miranda* apply only when persons are subjected to 'custodial interrogation.' " *State v. Thomas,* 2d Dist. Montgomery No. 20643, 2005-Ohio-3064, ¶ 27, citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). " 'Custodial interrogation' means questioning initiated by the police after the person has been taken into custody or otherwise deprived of his freedom to the degree associated with a formal arrest." (Citations omitted.) *State v. Vineyard,* 2d Dist. Montgomery No. 25854, 2014-Ohio-3846, ¶ 32.

"In order to determine whether a person is in custody for purposes of receiving *Miranda* warnings, courts must first inquire into the circumstances surrounding the questioning and, second, given those circumstances, determine whether a reasonable person would have felt that

he or she was not at liberty to terminate the interview and leave." *State v. Hoffner,* 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 27, citing *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995). "Once the factual circumstances surrounding the interrogation are reconstructed, the court must apply an objective test to resolve 'the ultimate inquiry' of whether there was a ' "formal arrest or restraint on freedom of movement" ' of the degree associated with a formal arrest." *Id.,* quoting *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

"The factors a court should consider in applying this reasonable person test include whether the encounter takes place in surroundings that are familiar to the suspect; the number of law enforcement officers present, as well as their conduct and demeanor; the degree of physical restraint imposed; and the duration and character of the interrogation." (Citation omitted.) *State v. Farrell,* 2d Dist. Miami No. 99-CA-24, 1999 WL 812249, *3 (Oct. 8, 1999). We note that "a police officer's subjective intent to arrest a suspect is immaterial to the issue of whether the suspect is in custody for *Miranda* purposes, unless and until that intent is communicated to the suspect." (Citation omitted.) *State v. Cross,* 2d Dist. Montgomery No. 25838, 2014-Ohio-1534, ¶ 13. Rather, the issue is whether a reasonable person in the suspect's situation would have understood that he was in custody. *Id.*

Individuals are not "in custody" for purposes of *Miranda* during a typical investigatory detention such as a routine traffic stop. *State v. Cundiff,* 2d Dist. Montgomery No. 24171, 2011-Ohio-3414, ¶ 60, citing *Berkemer v. McCarty,* 468 U .S. 420, 440, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or was compelled to respond to questions." (Citations omitted.) *State v. Hardy,* 2d Dist. Montgomery No. 24114, 2011-Ohio-241, ¶ 34. During an investigatory detention, "the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" without the need to first advise the detainee of his *Miranda* rights. *Berkemer* at 439– 440. "However, if the individual is, during the course of the detention, 'subjected to treatment that renders him "in custody" for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*.' " *State v. Keggan,* 2d Dist. Greene No. 2006 CA 9, 2006-Ohio-6663, ¶ 31, citing *Berkemer* at 440. (Other citation omitted.)

*State v. Sell*, 2d Dist. Montgomery No. 26458, 2015-Ohio-1940, ¶¶ 15-18. *See also State v. Brown*, 2d Dist. Montgomery No. 26937, 2016-Ohio-4973, ¶ 9.

**{¶ 11}** We have also considered factors such as " 'the location of the interview and the defendant's reason for being there, whether the defendant was a suspect,

whether the defendant was handcuffed or told he was under arrest or whether his freedom to leave was restricted in any other way, whether there were threats or intimidation, whether the police verbally dominated the interrogation or tricked or coerced the confession, and the presence of neutral parties.' " *State v. Zan*, 2d Dist. Montgomery No. 24600, 2013-Ohio-1064, ¶ 17, quoting *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 50 (2d Dist.).

{¶ 12} The trial did consider the totality of the circumstances, and reached its conclusion based on the objective test whether a reasonable person, under similar circumstances, would have understood that he was in custody at the time of the interrogation. The trial court relied on evidence in the record to find that, by show of authority, Jirac was detained from leaving the UPS Store, was told that the package contained illegal substances, was directed to the back parking lot so that he could not flee, and was then questioned about the drugs in the presence of multiple officers. We agree that these factual findings are supported by competent, credible evidence and support a conclusion that the statements made by Jirac were made during a custodial interrogation, triggering his *Miranda* rights.

{¶ 13} We also agree that the trial court properly applied the law applicable to statements made after *Miranda* warnings are given that confirm statements made before the *Miranda* warnings were given. In *State v. Cook,* 2d Dist. Montgomery No. 24524, 2012-Ohio-111, and *State v. Zan*, *supra,* we have discussed the precedent established by the Supreme Court of the United States regarding the admissibility of statements made in successive interrogations when *Miranda* warnings are not given until the second phase of the interrogation. *Id.*, citing *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.E.2d

222 (1985) and *Missouri v. Seibert*, 542 U.S. 600, 124 S.Ct. 2601, 159 L.E. 2d 643 (2004).

**{¶ 14}** As we explained in *Cook, supra,* "[t]he *Elstad* Court held that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Cook* at ¶ 23. However, in the more recent decision in *Seibert, supra*, the Supreme Court held that post-warning statements are inadmissible when the *Miranda* warning does not effectively advise the suspect that he has a real choice about giving an admissible statement that he has essentially already given. *Cook* at ¶ 18. The Supreme Court of Ohio has distinguished the two cases, finding that "*Elstad* and *Seibert* stand on opposite sides of the line defining where prewarning statements irretrievably affect postwarning statements. Still, that line cannot be said to be bright or sharply defined." *State v. Farris,* 109 Ohio St.3d 519, 849 N.E.2d 985, 2006-Ohio-3255, ¶ 22.

**{¶ 15}** In *Farris*, the court discussed factors to consider in making the decision whether an intermediate *Miranda* warning can be sufficient, including "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first." *Id.* at ¶ 28. In *Zan, supra,* the determinative factor for finding that the defendant's post-*Miranda* statements were voluntarily given was the consensual nature of the first interrogation. We conclude that the trial court properly considered the evidence in the record that Jirac's initial encounter with the police resulted in a custodial interrogation at the UPS store, before any discussion of his *Miranda* rights, that the same person conducted both pre- and post-*Miranda* interviews, and that the

interrogator treated the second interrogation as continuous with the first by asserting at the outset that it was designed to review what had already been discussed, and by clarifying any discrepancies in the two statements by asking Jirac to affirm the specific statements he initially made in the first interrogation. Therefore, applying the elements set forth in *Farris*, *supra,* we agree with the trial court that a defendant in similar circumstances reasonably would not believe after being given a *Miranda* warning that he had any other choice but to affirm the statements he had already made to the police before that warning. Since Jirac's post-warning statements were not the result of an informed, voluntary choice to waive his rights, the statements are inadmissible, and the trial court properly sustained the motion to suppress.

## V. Conclusion

{¶ 16} The State's sole assignment of error having been overruled, the order of the trial court suppressing evidence is Affirmed.

. . . . . . . . . . . . .

FROELICH, J., concurs.

HALL, J., dissenting:

{¶ 17} In my opinion, although the record supports the facts determined by the trial court, the resulting legal conclusion should be that when Jirac was questioned at the UPS store, a reasonable person in his situation would not believe he was in custody and the encounter was not a custodial interrogation. Jirac was told he was not under arrest and was not led to believe that he would be arrested, he was not in custody or restrained from freedom of movement, and he had expressed his voluntary decision to cooperate, without

coercion or complaint. The trial court indicated that Special Agent Miller admitted Jirac was not free to leave and would have been arrested had he attempted to flee. However, the subjective intent of the officer is not relevant in determining whether a defendant was in custody. *State v. Cundiff*, 2d Dist. Montgomery No. 24171, 2011-Ohio-3414, ¶ 57. Because I conclude a reasonable person, under similar circumstances, would have understood that he was not in custody at the time of the interrogation, Jirac was not subjected to a custodial interrogation and *Miranda* rights were not required. Therefore, the statements made by Jirac at the UPS store should not be suppressed.

**{¶ 18}** Based on the conclusion that Jirac's statements made at the UPS store should not be suppressed, I believe we do not need to decide whether Jirac's post-*Miranda* statements were tainted by his pre-*Miranda* statements. If the pre-*Miranda* statements were not unlawfully obtained, there is no taint to affect the post-*Miranda* statements and they too should be admissible.

. . . . . . . . . . . .

Copies mailed to:

Mathias H. Heck, Jr.
Michele D. Phipps
V. Gayle Miller
Hon. Michael Tucker